Good morning and welcome to the last day of our sitting here in Jacksonville. Judge Hull and I wish to thank Judge David Proctor from the Northern District of Alabama for sitting with us this week. He's a very experienced and highly regarded district court judge and we're very grateful. Thank you. Our case this morning is Block v. Pohling. Mr. Friedman. Thank you, Your Honor. May it please the court. Your Honor, the appellee defendant, Officer Robert Pohling, violated the constitutional rights of Mr. Block. When Officer Pohling branded Mr. Block as a vulnerable homosexual prisoner and further placed a violent offender of special concern in the same cell as Mr. Block. Taken together, these actions constitute deliberate indifference to a substantial risk of serious harm in contravention of the Eighth Amendment's prohibition on cruel and unusual punishment. Unless there are immediate questions, I will walk through. I'd like to begin by walking through the elements of the deliberate indifference claimed before this court. Thank you. In order to prevail, under this court's precedent interpreting and abiding by a Supreme Court precedent, a prison official violates the Eighth Amendment if he is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers an injury. This court has explained that there are five questions that must be resolved in favor of the plaintiff to prevail. A substantial risk of serious harm analyzed through an objective standard. Was the defendant deliberately indifferent? Which itself is three sub-elements. Subjective knowledge of the risk of serious harm by the defendant. Disregard of that risk by conduct that was more than merely negligible. And finally, there must be a showing of causation. When these standards are met, the plaintiff shall prevail. Turning to the facts of this case, Mr. Block demonstrated a substantial, or at least the allegations as set forth so far, at this stage in the posture construed as they must be in favor of Mr. Block, demonstrate a substantial risk of serious harm for three reasons. The beginning reason is first, Mr. Block's allegation of branding under this court's precedent in Harmon, and then I think drawing guidance from the Tenth Circuit's decision in Northington, the decision of the District of Columbia District Court in Thomas BDC, amongst others, show that branding, the labeling of an inmate in a manner that makes them vulnerable to attack from other inmates. Yes, Your Honor, that is correct, but Farmer, as well as Lane and Hale, and a few other cases, stand for the proposition that the defendant does not have to be, the perpetrator of the attack does not have to be the individual, does not have to be known to the defendant at the time that the wrongdoing occurs. That is correct. This circuit has explained, I believe in a case that is on point here, LaMarca, that by answering two questions. The first is, did the defendant create the risk of injury? And the second is, did the risk lead to the injury? And those are separate questions that when both are resolved affirmatively, support a conclusion or lead to a conclusion that the defendant's actions were the proximate cause of the injury. And I think that case speaks to the facts here. Meaning, as applied, what polling did was create a dangerous environment at a very high level for Mr. Block. And that dangerous environment led to the injury. And that, I think, satisfies the causation. I think the answer to that question is both. Meaning, the deliberate indifference inquiry before this Court is, was a substantial risk of serious harm created by Officer Poling's actions? And the answer to that question is yes. Poling created conditions that were unreasonable, inhumane, and exceeded the legitimate bounds of confinement for an inmate. Those conditions are what, I believe, created the zone of danger under which Mr. Hippolyte committed the actual violent assaults. But the Supreme Court and this court, the circuit, has not required a showing that the conditions that were created were done with the intent of a specific individual attacking another. But that's still different from the causation question. If we grant you that there was an environment created where there was a risk, we still have to show that the officer's remarks caused the attack and caused the injury, right? I believe, yes, Your Honor, but I think causation is not a one-to-one analysis, like your question suggests. Meaning, I think LaMarca recognizes that it may not be possible, or for whatever reason, it is not necessary to show a direct link from an individual comment, especially in a case like this where there are multiple factors at play. I think it is not, and looking through the substantial risk of serious harm, and in fact the claim more broadly, in addition to branding, I think the placement of Mr. Hippolyte in Mr. Bloxtel is itself relevant, and an additional factor under which... What we are seeing is a pattern of actions by officer polling. Again, as alleged, but as alleged from the facts... Is there any Rule 56 evidence to suggest polling assigned Hippolyte to the cell? I believe that that is at the least conceded by the State's pleadings below. I can find the site. I don't have the site. I thought polling denied that he placed Hippolyte in that cell. Polling denied it, but the State later, and I believe the record, because of what they're... I will look, Your Honor, for the record citation, but the State contradicted that in their filings below. Even assuming that polling put Hippolyte in the cell, is there any evidence in the record that polling knew about Hippolyte's previous sexual crimes or that he was described as this offender of special concern? Under the Lane decision, Your Honor, we don't need to have specific evidence of that. Lane assumes... Lane says that a court is to assume or an officer... A court may assume that an officer, by virtue of their role, their security-related obligations within a prison, knows of the conditions of or the circumstances of an inmate's history and threat to others. So when there's, at least in a case like this where there is an objective conspicuous marker of someone's criminal history. But he, as I understand the record, and help me with this, there's no evidence that Hippolyte had committed any kind of sexual misconduct in prison, is that right? That's correct. Before the incident. I understand he did after. Absolutely. That is correct. But I don't think there's any case that... And Mr. Hippolyte had been in jail 14 months at this prison, is that correct? That's correct, Judge Hall. And his only two disciplinaries were disrespectful to an officer and a theft? That's correct. Okay. And the only point I'll make on... One last thing. In the record, if polling had bothered to look at it, and we don't know whether he looked at it or not, but certainly arguably it was available to him, would show that the sex crimes of Mr. Hippolyte was on a minor. That's correct, Your Honor. And how old was Mr. Block? He was 51. Certainly about that age, I'm sure you're correct, Your Honor. I couldn't figure out whether the minor was male or female as to the prior sex crime. I'm not sure it matters one way. Could you figure that out? I was not able to figure that out, no, Your Honor. And I will... And in fact, the sex crime on the minor was quite a few years before this incident. That's correct. That's correct, Your Honor. Even if officer polling didn't know, let's assume that the history of Mr. Hippolyte was relevant or important, is there an argument that officer polling had an obligation to look into his history, even if he didn't know, before housing the two inmates together? I think that that is presumed within the court's description, and I believe it is, again, the Lane decision that talks about guards either should be or are expected to be on notice of past conduct. So, I think that would encompass an obligation or a responsibility, yes, to know the history of an inmate. And I would just clarify that there is no case that I'm aware of, at least, that says that the only relevant history is an inmate's conduct in prison. I think here the nature of the sexual assaults committed by Mr. Hippolyte before he was incarcerated are equally relevant, and I think the Caldwell case recognizes that. And there's a case from the District of Oregon that very clearly, I believe it's the Chandler case that's cited, seems to very clearly look to criminal history prior to incarceration. There's no reset once an inmate is imprisoned. What do we make of your client's failure to report it immediately? I think we can... I think, most importantly, we make no judgment as to how it affects the merits of the claim, meaning I don't think it's relevant to the legal analysis, but I think we can... Well, I think it's relevant. It may not be dispositive, but it's certainly relevant that if someone does not report something. Certainly, he would take a position as relevant if he did, right? That's fair, Your Honor. Yes, I agree. It's at least not dispositive. But I will point to the record where Mr. Block says that he was afraid to report it, and so I think it substantiates or adds some credibility to his allegations that he had been threatened by officer polling, that officer polling both had told him that when he made his comments that he could be fired for how he was spoken and then later threatened him not to further snitch after Mr. Block had first made a report. And so I think what Mr. Block has alleged is, I think, a consistent story about being branded and then being threatened about further reporting. I was confused about who was in charge that night. It looked like both parties agreed that Mr. Rose or Captain Rose was the officer in charge and polling was under Rose. That's my understanding as well, Your Honor. Okay. So this goes to the interview first before you put in sales. Why wouldn't it Mr. Rose, who is the faulty person here, on the interview that Mr. Block said he never got? I believe that that was an incorrect, that that was a failure to adhere to prison policy, or at least I take Mr. Block at his word about that. Well, I do too because it's in the light most favorable. What I'm trying to understand, so Rose is the person in charge of the unit, there are two people on, the other one is polling. How do we know from this record, because I could not tell, who said put Block in cell two or cell three or how that happened? I couldn't tell. I will look for that during the break. You don't need to look for it in the break. Do you know how that happened? I read the state's pleadings below to concede the point that Officer Polling was in charge of the housing decision. Okay. Yes. If there's no further questions at this time, I'd like to reserve time for a rebuttal, please. Thank you. Good morning. You may please the court. My name is Edward Wenger, and I'm here on behalf of Officer Polling. The court should affirm the grant of summary judgment for one of two reasons. Before I get into those two reasons, I'd like to address something that was brought up in Mr. Block's initial presentation. The idea that we can presume either that corrections officers did know or should have known about a fact that's relevant is flatly foreclosed, not only by the farmer decision from the Supreme Court, but by a host of decisions from this court as well. Under the qualified immunity analysis, pardon me, under the deliberate and different analysis, the second prong is purely, not purely, but a subjective inquiry into what the officer knew and a subjective inquiry into what the officer should have done with that knowledge. So to the extent that there's suggestion out there that there is some sort of fault, generally speaking, or some sort of responsibility for an officer to be aware of certain information. What is your response to his assertion, his colleague's assertion, that the state's position in the district court contradicted Polling's position on a couple of material facts? Our position on that, Your Honor, is that those material facts are not relevant for all the reasons why this court should affirm the Grand Assembly judgment. So getting back to the two points that I'd like to make, and I would like to focus first on the issue of Mr. Block's waiver of his branding argument. Simply put, this branding argument is the gravamen of the arguments that Mr. Block has advanced on appeal, and that is materially different than the one that he has actually advanced at the pro se at the district court level below. That usually happens when you get an attorney. That does, Your Honor. But there's been no suggestion that the denial of the appointment of counsel was problematic or was an error. That's certainly not an argument that's been advanced on appeal. I'm just saying usually the lawyer spots something that a pro se litigant may not have. That does, and that's true, Your Honor. But Circuit Rule 3.1 exists and has actually stemmed from this precise type of situation where there's a pro se inmate below who files a bunch of arguments and who argues at a certain level to the magistrate judge's report and recommendation and then fails to bring that information or those arguments to the district court's attention. And the rule exists for a really important reason. It's that we want the district court who's actually deciding whether or not to dispose of that case to have all those arguments before him. So Block was warned that he would waive the right to challenge on appeal the district court's order. At any event, Mr. Block, the time frame, Mr. Hippolite wasn't on the unit at the time Mr. Block says polling made the comment, correct? That is correct, Judge Hall. Okay, so Mr. Hippolite didn't hear this so-called branding comment. There is nothing in the record to suggest that Mr. Hippolite was ever aware in any way, shape, or form. Or that anybody told him about it. That is correct, Judge Hall. Okay, so I think you need to go. Assuming we consider it, what do we do now? Assuming that you consider that, assuming we consider that, getting to the next point, this is a case that turns on qualified immunity. And in this case, there's nothing that has been cited. There's been no case that I'm aware, under the United States Supreme Court, this court, or the Florida Supreme Court, that would clearly establish that what happened here, the particularized facts of this case, violated Mr. Block's clearly established Eighth Amendment rights. How is Harmon distinguishable? Pardon me, Your Honor? Harmon case, how is that distinguishable? The Harmon case dealt with, that was a branding case that dealt, I believe, with a prison guard branding a particular inmate as a snitch. So there is a distinction between the type of branding that occurred in this case and the type of branding that occurred in the Harmon case. But more to the point, because this court has said that the clearly established rights need to be determined in light of the specific context of the case, it's important to put the facts of this case into context. What we have here, even assuming that remarks were made, as we must at this posture, the particular facts is borne out by the record of this, that the remarks were made, there's no record evidence that any other inmate on the Administrative Segregation Unit heard of these remarks, and there's no evidence that the alleged branding spread from the Administrative Segregation Unit to the general population where Mr. Hippolyte was held at the time. There's no record evidence that the information actually, in fact, reached Hippolyte. So that's the facts that are relevant to the branding argument. Well, but you were talking about clearly established law. Correct, Your Honor. The Harmon case was a case where a guard branded the plaintiff as a snitch, and that resulted in threats on the inmate's life. Well, that's a branding argument sort of at a very general level, but if you look at the particular facts of this case, there is another particular set of circumstances that pull this completely out of the Harmon case and that demonstrate that there was no constitutional violation at all, let alone one that was even remotely clearly established. And those deal with the separate argument that's being made here, and that's the placement of Hippolyte in the cell itself. So in the Harmon case, if an inmate is placed in general population and left to the state of nature, essentially, it makes more sense to say the branding would or could lead to a particular assault that would occur here. The distinction between that case and this case is that Mr. Block was being placed in administrative segregation. To actually establish under the Harmon case that this action was a clearly established violation, you have to prove that the facts of what happened that led to the assault itself were clearly contemplated by Harmon. Again, what we have here is Mr. Poling taking Mr. Block, putting him into the administrative segregation unit. After that, he placed another offender in that same cell. That offender had a relatively clean disciplinary history. As Judge Hall had mentioned earlier, this offender had two different infractions  Those infractions were for theft and for disrespect to a prison guard. Based on Poling's information, the information that was available to him, in that, based on the record evidence, we can conclude he was subjectively aware of, he thought... At least with respect to the idea that a guard should not brand an inmate, doesn't Harmon clearly establish that? If Harmon clearly establishes that an inmate branding is in isolation and an issue, we still have to go forward and show that the inmate branding itself, under the facts of this case, result in a deliberate and different State Amendment violation. And to get to that point... For the constitutional violation. That's correct, Your Honor. And that's what we're dealing with here. Are you arguing that, in essence, that Hippolyte was an intervening cause of the injuries? I think that that's a strain of one of the arguments that we've made. And I believe that Judge Proctor, whenever he was questioning my friend, was hitting on that as well. And we think that that's a fair way to dispose of this case also. Our briefing, we focused more on the objective risk and the subjective awareness. But we also made the point that for all those same reasons, there was not a satisfaction of the proximate cause element. We don't think there could be. And to be certain, Mr. Blockett, at the trial court below, had the opportunity. The main thing is there's no constitutional violation to begin with before you even get to proximate cause. That's absolutely right, Your Honor, Judge Hall. Under clearly established law. That's exactly right. So our first argument, first and foremost, was that there was no constitutional violation at all. What we have here is what we have conceded to be and what Mr. Poling himself has testified to were terrible comments. And there's in no way, shape, or form. The clearly established argument is the weaker because it assumes that there's a constitutional violation. And if there is a constitutional violation, the structure of it is that there was branding that either led to the assault or there was a placement of someone in danger with a dangerous individual that led to an assault. And either one of those theories seems to be fairly clearly established. That is true, Your Honor, and that's the reason why in the briefing we led more so than anything else. In the briefing we focused on the constitutional violation, and that turns an awful lot on just the nonexistence of the record evidence to establish either that there was an increase in objective risk caused by Mr. Poling or otherwise, or that there was a chain of causation from the alleged branding comments to Officer Poling, or what we think is, to me, seems like the most case dispositive fact of this entire case is that there's nothing in the record to suggest that Officer Poling was in fact subjectively aware that when he placed Hippolyte in that cell with Block that it was substantially likely that a sexual assault was going to occur. That's just not borne out by the record. And at the trial court level, Mr. Block had the opportunity to do so at several occasions. The magistrate judge lent him an awful number of opportunities to ask Mr. Poling about this placement in particular. What we have here, though, is Officer Poling taking an inmate who had a relatively clean disciplinary record and placing him in an administrative segregation unit with Mr. Block. There's nothing in the record to take that and jump to the subjective awareness that there's an increase in likelihood that an assault would occur. My friend, representing Mr. Block, has focused an awful lot on this designation as a violent offender of special concern, but the problem with relying on that fact is twofold. Number one, there's nothing in the record to suggest that Mr. Poling had any idea of that designation. And based on this court's case law, we can't presume that or we can't impart that or we can't fault him for not knowing that, at least for purposes of the Eighth Amendment's deliberate indifference analysis. The second part is that it really tells us very little about Mr. Hippolyte's risk factor. I mean, the characterization is what it is. It says that he was violent, but this is coming from an automatic mechanical application of Florida statutes that attach to the particular offense for which he was convicted. So this is long before Mr. Hippolyte was incarcerated in the area that led to this assault in the first place. And more to the point, this designation would come if he had, for instance, committed a burglary. And for that, if it's just standing alone, that designation, it tells us very little about placing him in the administrative segregation unit with Mr. Poling. It's just not the type of fact or not the type of information that could actually give rise to subjective awareness that a sexual assault was more likely to occur based on that placement. Tell me about Captain Rose. As I understand from other counsel that you, the State, agreed in the district court that Poling is the one that made the decision to go to this cell. Is that correct? We are not disputing that Poling was the one who made the decision. From my understanding of the record, Your Honor, Mr. Poling, I think this also underscores the rather sort of limited knowledge he had, this was a housing prison official. He was the one who had, whenever there were certain reasons, to move one particular inmate. Captain Ross is a supervisor that night, but Poling is making the decision when inmates come in to put them into the cells. We're not disputing that the record below is somewhat murky on that, and we don't feel, Your Honor, that. And the light most favorable to the plaintiff, at this juncture you can see Poling was the person. That's correct. With the summary judgment posture that we're in, we must accept that for purposes of this posture, that Mr. Poling was the one who made the decision. Thank you. But again, Your Honor, that underscores that this decision was made essentially to transport one inmate who, by all accounts, at least as far as the prison disciplinary officials were concerned, was not a threat of violence. And for that reason, that second prong of the qualified immunity analysis just is not, and on this record cannot be satisfied. If there are no further questions, I'd like to return very briefly to the waiver argument, because I do think that there is some importance to that. I see my time is running short. The only thing that I would add to that is that Mr. Block really does sort of try to treat this rule as if it applied claim by claim and tries to argue that the objection to the claim itself preserves all the objections that could go into this. By the plain terms of the rule, though, I'm confused about your waiver argument. You're saying he waived it because he didn't bring it up in the district court or he waived it because he didn't bring it up in his first brief? Specifically, ma'am, I'm saying he waived it because he failed to include any objection to the magistrate judge's objections from the report and recommendation. To the R&R. So you're saying he waived it in the district court. That's correct. What did the magistrate judge find on that issue, though? What was in the R&R? Twofold. On page 15 of the R&R, he addressed, assumed that the comments had happened, and then found and recommended that they did not establish a subjective awareness. So the magistrate judge accepted that the comments had happened? He absolutely did. Why would Mr. Block? He would have to object to the legal conclusion that even though these remarks happened, that they did not and they could not on this evidence establish a genuine issue of material fact, at least to the extent that Mr. Block was arguing that they demonstrated a subjective awareness of a substantial risk. And we would also support the court that the magistrate judge's failure to address the branding, even though he acknowledged that it occurred, whenever he was discussing the objective risk. Did he file any objections to the R&R? He did, yes, Judge. And he was pro se? He was pro se. Okay. But, again, I underscore that there's been no argument there. How can we liberally construe them as saying he's objecting to everything the magistrate judge did in reality? Respectfully, Your Honor, that's not borne out by the case law, and it's certainly not borne out by how courts have interpreted this particular rule. And I see that my time is out, but I would direct the court to Patton v. Rowell. That is 678, that appendix 898, and I think that gives a pretty good indication about how panels of this court in the past have applied this rule, particularly in the pro se context, in a way that's, in our view, materially indistinguishable from the way that it should be applied here. And if there are no further questions, we would ask that the summary judgment order by the district court be affirmed. Thank you, Your Honor. If I may, I have just three points that I'll respond to, and, of course, answer any questions that you may have. Beginning with the waiver argument, I think the, as we explained in the brief, the Evans case, the published opinion of this court, which we agree with the state is applicable here, makes clear that, or I should say, is not dispositive of waiver in favor of the state here. And that is because Evans demonstrates that when a claim is objected to, it is preserved for, objected to at the R&R stage, it is preserved for subsequent appeal, and for all of the reasons that this court said. And I would just point to pages 5 to 6 of our reply brief, which lays out all of the objections, including to the deliberate indifference claim itself that Mr. Block made. Turning to a more, I'd like to speak briefly to what I've noticed is a concern for what Mr. Hippolyte knew at the time he was placed. Before you do that, basically I'm looking back. On the R&R, it's fair to say what he objected to was all about A6, A5, A7 classifications. That was his main thing in the objections, not to anything else. No, I think he objected to the finding that he had not brought, he had not substantiated a deliberate indifference claim under the Eighth Amendment. He also objected to the classification. So it is both. But there is both legal and factual objections. Okay, thank you. Thank you, Your Honor. I think your question at this point, it seems to me the offensive statement and inmate awareness have to be an indispensable part of a braining case. There's got to be a nexus between those two. Disagree? Well, there's no case that holds that, Your Honor. But how could it? It seems like that would be a negligent standard. If there's not inmate awareness of a statement and you're saying that he should never put this person in because of something that's more of a standard of care issue, you've got two paths here. You've got to show that the branding led to the assault or the placement of Hippolyte led to the assault or some combination of both, right? That's right, Your Honor. All right, so let's stick with the branding. How is it that such a statement and awareness by the attacker can't have to be indispensable? I don't see how you can get around that. Well, I think that a jury could conclude that Hippolyte was aware or that at least inmates in the prison were. And again, we look at Rule 56 evidence to see what evidence a jury could rely upon, not whether they would existentially arrive at this conclusion. Absolutely, Your Honor. Mr. Block described the construction of the prison and on the wing in particular, explaining how the physical layout of the doors led to communication amongst and by the inmates. He further explained how Officer Poling's comments were loud and heard down the hall. So how do you make that connection? I assume, let's assume for purposes of our discussion, that everyone on that wing heard Poling. Hippolyte wasn't on the wing. Unless there's a PA system that carries over a different facility at the prison. Well, as Mr. Block explained, the inmates talk, and they talk freely and amongst themselves. And the purpose of a branding that branding is, or the reason branding is so problematic is that it spreads throughout the population. It identifies one individual inmate as vulnerable to attack from the rest of the prison. But the unique fact here is that Mr. Hippolyte wasn't even there when the comment was made. He was brought in after that. I don't believe, thinking through now the branding cases, that there is, I'm not aware of any element, any case that has held that the actual inmate who committed the attack was present when the branding occurred. I agree that the branding cases do talk about other inmates. Does each one of them, though, do have record evidence that connected the derogatory statement to knowledge by the attacker? Your Honor, I think Mr. Block did as well a job as he could do to provide sufficient evidence on this point. And the state, my friend pointed out that Mr. Block proceeded per se, and he tried and was denied access to an attorney. And that decision is not an appeal. You're not going to get very far with me, at least, saying that your client didn't have a fair shot. They reopened discovery. They gave him two different shots, it seemed like, at creating material issues. In fact, the magistrate judge seemed very patient with him. I agree with the magistrate judge. I'm not criticizing. He reopened discovery so he could pursue some of these theories that he articulated to the jury. The only thing I think is problematic here is that what this court seems to be asking for is an affidavit or a deposition or a statement from another inmate, which I think is particularly unreasonable to expect Mr. Block, himself incarcerated and proceeding per se, to provide. The state could also have sought out Mr. Hippolyte or any other witness and provided a statement. And there's no evidence in the record submitted by the state to rebut the allegations of Mr. Block that these comments were loud and heard and that communication happened freely. And I think if this court thought it appropriate to remand for a limited inquiry into what Mr. Hippolyte knew, that would be a more fair outcome. But that is something that I think would ask too much of a per se litigant denied counsel while incarcerated. Thank you, Your Honors. Court is adjourned. Thank you. Oh, Mr. Friedman, we recognize that you're court appointed and we appreciate your service.